■ In the Matter of MARY I. RATLIFF et al., Appellants, v JEFFREY T. GLANDA et al., Respondents. [693 NYS2d 319] —Mikoll, J. P. Appeal from an order of the Supreme Court (Jung, J.), entered March 30, 1998 in Essex County, which, upon referral of the matter from Family Court, *inter alia*, dismissed petitioners' application, in a proceeding pursuant to Family Court Act article 6, for custody of respondent Jeffrey T. Glanda's children.

On September 19, 1997, respondent Jeffrey T. Glanda (hereinafter respondent) was arrested and thereafter indicted for, *inter alia*, the murder of his wife, Jeannine Ratliff, the mother of two of his children, a son (born in 1985) and a daughter (born in 1989).

Immediately following respondent's arrest, petitioner Mary I. Ratliff and her husband, the maternal grandparents,[1] took the children into their home, enrolled them in school, and received temporary guardianship and temporary custody of the children. Petitioners[2] then commenced this proceeding seeking, *inter alia*, custody of the children.[3]

Supreme Court dismissed the petition and the temporary custody and guardianship letters issued to the Ratliffs, and found that the children were to remain in the custody of respondent, permitting him to make arrangements for their care. Respondent placed the children in the care of his sister and her husband, respondents Cheryl Vaillancourt and Donald Vaillancourt. Petitioners subsequently filed an amended and second amended petition for custody, which, *inter alia*, added the Vaillancourts and Agatha Glanda, the paternal grandmother, as respondents. Thereafter, respondents cross-petitioned for custody of the children.

After a hearing, Supreme Court dismissed the petition and cross petition finding that petitioners did not have statutory standing to seek custody and, as to common-law standing, that petitioners failed to show extraordinary circumstances. The court determined that, to establish extraordinary circumstances, petitioners needed to allege and prove that respondent murdered the children's mother. The court further found that even assuming the existence of extraordinary circumstances, awarding petitioners custody was not in the children's best interests. Visitation was awarded to petitioners. This appeal ensued.

---

1. The grandfather is now deceased.

2. The other petitioner is Jerri T. Ratliff, the maternal aunt.

3. This proceeding was initially commenced in Family Court and subsequently transferred to Supreme Court by order dated October 6, 1997.

Petitioners contend that Supreme Court erred in dismissing the petition as insufficient on its face for lack of common-law standing based on the court's finding that they failed to establish extraordinary circumstances. "[I]ntervention by the State in the right and responsibility of a natural parent to custody of her or his child is warranted if there is first a judicial finding of surrender, abandonment, unfitness, persistent neglect, unfortunate or involuntary extended disruption of custody, or other equivalent but rare extraordinary circumstances which would drastically affect the welfare of a child" (*Matter of Bennett v Jeffreys*, 40 NY2d 543, 549). A nonparent lacks standing to seek custody unless the nonparent can establish that the parent relinquished his or her superior custodial rights by establishing one of the aforementioned circumstances (*see*, Family Ct Act § 651). Once petitioners have established extraordinary circumstances, the court must consider the best interest of the children in determining whether to terminate respondent's custodial rights (*see*, *Matter of Bennett v Jeffreys*, *supra*, at 548; *Matter of Lynda A.H. v Diane T.O.*, 243 AD2d 24, 26, *lv denied* 92 NY2d 811).

We conclude, contrary to Supreme Court's determination, that the indictment and incarceration of respondent pending his criminal trial for the murder of the children's mother are sufficient, standing alone, to establish extraordinary circumstances. Petitioners need not submit proof that respondent committed the murder. Petitioners' amended petition was thus sufficient on its face to allege extraordinary circumstances based on respondent's indictment and incarceration for the murder of the children's mother (*see*, *Matter of Bennett v Jeffreys*, *supra*, at 550).

Having found extraordinary circumstances, we now consider petitioners' second contention, that the placement of the children with the Vaillancourts was not in their best interest. We note that in granting custody to a nonparent, the court need not terminate paternal rights (*see*, *id.*, at 549; *Matter of Benitez v Lalano*, 39 NY2d 758, 759). We hold that the record supports Supreme Court's determination that, under the best interests of the children analysis, termination of respondent's legal custody of the children and the nullification of the arrangements made by him with the Vaillancourts for their care during his absence is not warranted.

The testimony of the children in a *Lincoln* hearing presents the most cogent reason to uphold the placement of the children with the Vaillancourts. The children indicated that, for the time being, they prefer to stay with the Vaillancourts, who

obviously have supplied them with a suitable home and tended to their physical and emotional needs, especially in being supportive of the children's desire to love and visit their father. The Vaillancourts also have afforded the children's mother's family ready access to the children for visitation. Petitioners, on the other hand, have expressed their anger and antagonism toward respondent. The children (particularly the older child) are very conscious of, and unhappy with, petitioners' ill will against their father. Further, the children have adjusted to their new home and school well; they have weathered a terrible period in their life successfully and have stabilized emotionally to a great extent. They have made new friends and they appear content under the present arrangements. A further move may undo the gains they have made. Added to these very weighty considerations, we observe that respondent has not been challenged as to his fitness as a parent by any authorized agency (*see, Matter of Bennett v Jeffreys, supra,* at 545). His absence from the children is involuntary and the arrangements he has made for them are satisfactory. We note too that the Law Guardian recommends that the children remain with the Vaillancourts.

Finally, petitioners contend that the children's Law Guardian did not effectively represent them. We disagree. The Law Guardian played an active role throughout the trial in the examination of witnesses, requested psychological evaluations of the children, and her analysis of the law and circumstances of the case was thorough (*see, Matter of Jamie TT.*, 191 AD2d 132, 136-137; *see also, Matter of Pratt v Wood*, 210 AD2d 741, 742).

Mercure, Crew III and Yesawich Jr., JJ., concur.

Peters, J. (concurring in part and dissenting in part). I concur with that portion of the majority's determination which found, contrary to Supreme Court, that petitioners alleged sufficient extraordinary circumstances to confer standing. However, as to that portion of the majority's determination which found that the issuance of a final order of custody was properly premised upon a best interest analysis, I find the determination premature. Despite the characterization of the "Decision and Order" of Supreme Court as a final order of disposition, I believe that the disposition was, in effect, a temporary order of custody.

According to the "Decision and Order", "[a]ll petitioners concede that if [respondent] Jeffrey Glanda [hereinafter respondent] is found innocent of all criminal charges, the children must be returned to him". The document clearly specifies

that it is intended to be effective pending the outcome of respondent's criminal trial relating to the murder of the children's mother. The temporary nature of this arrangement is buttressed by the oral representations of both respondent's counsel and the Law Guardian.* I believe that respondent's guilt or innocence of the crimes charged, determined only after the disposition of the criminal matter at the trial level, now constitutes a critical "best interests" factor (see,. Domestic Relations Law § 240 [1-c], as added by L 1998, ch 150, § 1; Family Ct Act § 1085, as added by L 1998, ch 150, § 3, eff July 7, 1998) upon which a permanent determination must be predicated (see, Matter of Bennett v Jeffreys, 40 NY2d 543). While a trial court need not necessarily await such disposition in all matters of this kind, the facts presented here warrant this result.

Since this proceeding did not originate in Supreme Court and no appeal as of right lies from this temporary order of custody (see, Family Ct Act § 1112 [a]; see generally, Matter of Bridges v Hertica, 234 AD2d 862, 864), I would decline to reach the merits (see, CPLR 5701 [c]).

Ordered that the order is affirmed, without costs.

---

* Notably, at oral argument respondent's attorney denied that Supreme Court had rendered a permanent custody determination. He opined, instead, that custody rested in his client and respondents Cheryl Vaillancourt and Donald Vaillancourt. The Law Guardian contended that it was her belief that the court had continued legal custody with respondent and granted physical custody to the Vaillancourts.