Matter of A. DD. v B. EE. (2025 NY Slip Op 02826)

Matter of A. DD. v B. EE.

2025 NY Slip Op 02826

Decided on May 8, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:May 8, 2025

CV-23-1337
[*1]In the Matter of A. DD., Respondent,
v
B. EE., Appellant. (Proceeding No. 1.)
In the Matter of A. DD., Respondent,
v
B. EE., Appellant. (Proceeding No. 2.) (And Another Related Proceeding.)

Calendar Date:March 27, 2025

Before:Garry, P.J., Egan Jr., Reynolds Fitzgerald, McShan and Mackey, JJ.

B. EE., Halfmoon, appellant pro se.
Rural Law Center of New York, Inc., Plattsburgh (Lora J. Tryon of counsel), for respondent.
Christine E. Nicolella, Delanson, attorney for the children.

Mackey, J.
Appeal from an order of the Family Court of Otsego County (John Lambert, J.), entered June 20, 2023, which, among other things, (1) granted petitioner's application, in proceeding No. 1 pursuant to Family Ct Act article 6, for custody of the parties' children, and (2) granted petitioner's application, in proceeding No. 2 pursuant to Family Ct Act article 8, finding respondent to have committed a family offense.
Petitioner (hereinafter the mother) and respondent (hereinafter the father), who are married but separated, are the parents of the subject children (born in 2011 and 2013). In July 2022, the mother filed a petition to determine a custody arrangement for the parties' children, as well as a family offense petition against the father. The father in turn cross-petitioned for a custody order, seeking primary physical custody of the children. Following a three-day fact-finding hearing and a Lincoln hearing, Family Court awarded the mother sole legal and residential custody of the children and granted the father liberal telephone contact and reasonable parenting time. On the family offense petition, the court found that the father had engaged in conduct against the mother constituting harassment in the second degree (see Penal Law § 240.26) and ordered a dispositional hearing. The father appeals.
Initially, a subsequent custody order was entered upon consent in August 2023, in which the parties agreed to add certain terms to the order on appeal. Nevertheless, this appeal is not moot as the subsequent order "only modifies specific terms of the order on appeal" — specifically stating that it "incorporated" them into that order — such that "the parties' rights will be directly and immediately impacted by the determination of this appeal" (Matter of Brandon QQ. v Shelby QQ., 216 AD3d 1212, 1213 [3d Dept 2023] [internal quotation marks and citation omitted]; see Matter of Elizabeth NN. v Hannah MM., 148 AD3d 1235, 1236 [3d Dept 2017]).
Turning to the merits, "[t]he paramount consideration in an initial custody determination is the best interests of the child[ren]" (Matter of Steven U. v Alisha V., 209 AD3d 1184, 1184-1185 [3d Dept 2022] [citations omitted]; see Matter of Leslie QQ. v Daniel RR., 232 AD3d 1086, 1088 [3d Dept 2024]). To this end, "[t]he factors to be considered include the quality of the parents' respective home environments, the need for stability in the children's lives, each parent's willingness to promote a positive relationship between the children and the other parent and each parent's past performance, relative fitness and ability to provide for the children's intellectual and emotional development and overall well-being" (Matter of William Z. v Kimberly Z., 212 AD3d 1036, 1037-1038 [3d Dept 2023] [internal quotation marks, brackets and citations omitted]; see Matter of Kody O. v Maya P., 227 AD3d 1196, 1196 [3d Dept 2024]). Given Family Court's superior position to assess witness credibility, we defer to its factual findings and [*2]credibility assessments and will not disturb its determination where it is supported by a sound and substantial basis in the record (see Matter of Kyle I. v Kandice K., 232 AD3d 1074, 1076 [3d Dept 2024]).
Taken together, the hearing testimony and record evidence amply support Family Court's finding that the parties "have severe communication difficulties that preclude a joint custodial arrangement" (Antonella GG. v Andrew GG., 169 AD3d 1188, 1189 [3d Dept 2019]; compare Matter of Bradley D. v Andrea D., 144 AD3d 1417, 1420 [3d Dept 2016]). The record further indicates that, although the parents had evidently alternated acting as the primary caregiver for the children in the past, the mother was the more involved parent at the time of the hearing concerning the children's everyday needs and the younger child's special education. Notwithstanding the father's denial, the court further credited the mother's testimony that the father had engaged in abusive behavior toward her in the presence of the children on several occasions, finding that she had established by a preponderance of the evidence that the father's conduct constituted harassment in the second degree (see Penal Law § 240.26). Accordingly, these circumstances were appropriately considered when determining the children's best interests (see Matter of Frankie CC. v Rachel CC., 225 AD3d 1112, 1114 [3d Dept 2024]; Matter of Warda NN. V Muhammad OO., 217 AD3d 1086, 1089-1090 [3d Dept 2023]). The father's argument that the mother was improperly permitted to testify as to certain allegations of unwanted sexual contact is unpersuasive, as the record reflects that the mother alleged in her family offense petition that the father's conduct constituted, among other things, coercion in the second degree (see Penal Law §§ 135.60 [3]; 135.61); although she did not set forth the specific factual basis for her allegation in her petition, the father was permitted to thoroughly cross-examine the mother on this issue. Thereafter, in his own testimony, he specifically denied the allegation. Because the only witnesses to the alleged sexual abuse were the parties themselves, and as Family Court allowed the father to fully address the issue in his cross-examination of the mother and in his own testimony, we are unable to discern any prejudice to the father concerning this issue.
As for the mother's admitted prior use of corporal punishment to discipline the children, she asserted that she has since participated in parenting classes and modified her discipline of the children accordingly. Family Court, which had the opportunity to observe the mother's demeanor, was entitled to credit her testimony (see Matter of Frankie CC. v Rachel CC., 225 AD3d at 1115; Matter of Tara DD. v Seth CC., 214 AD3d 1031, 1034 [3d Dept 2023]). Notably, multiple witnesses, including the younger child's teachers and the older child's therapist, testified as to the mother's appropriate and loving relationships with the children. Moreover[*3], the attorney for the children advocated in favor of granting sole legal and physical custody of the children to the mother, with parenting time to the father. In view of the foregoing, a sound and substantial basis in the record supports the determination awarding sole legal and residential custody to the mother, with liberal telephone contact and reasonable parenting time to the father (see Matter of Jacklyn PP. v Jonathan QQ., 221 AD3d 1293, 1297-1298 [3d Dept 2023]; Matter of Warda NN. v Muhammad OO., 217 AD3d at 1089; Antonella GG. v Andrew GG., 169 AD3d at 1189-1190).
Contrary to the father's contentions, our review of the record reveals that Family Court properly considered the evidence before it — including a prior investigation into the parties' respective allegations — in determining the children's best interests (see generally Matter of Sarah QQ. v Raymond PP., 210 AD3d 1321, 1322 [3d Dept 2022]). We are unpersuaded by the contention that certain minor factual inaccuracies in the court's detailed findings of fact render the determination unsupported by the record (see Matter of Bond v MacLeod, 83 AD3d 1304, 1306 [3d Dept 2011]). As to the father's claims of bias, our review of the record reveals that the court afforded the father wide latitude as a pro se litigant and nothing suggests that Family Court's decision was affected by any bias (see Matter of Michelle V. v Brandon V., 110 AD3d 1319, 1324-1325 [3d Dept 2013]; Matter of Hanehan v Hanehan, 8 AD3d 712, 714 [3d Dept 2004]), nor is the position of the attorney for the children in favor of the mother indicative of bias (see generally Matter of Amanda YY. v Faisal ZZ., 198 AD3d 1125, 1129 [3d Dept 2021], lv denied 38 NY3d 908 [2022]).
Finally, as to the father's challenge to Family Court's family offense finding, "[b]ut for very limited circumstances involving abuse or neglect, no appeal lies as of right from a nondispositional order of Family Court" (Matter of McCoy v McCoy, 134 AD3d 1206, 1207 [3d Dept 2015]; see Family Ct Act § 1112 [a]). Here, because the order appealed from was nonfinal as to the mother's family offense petition and the father did not seek permission to appeal, this issue is not properly before us and we decline to treat the notice of appeal as a request for permission to appeal (see Matter of Donald OO. v Tiffany OO., 212 AD3d 951, 952 [3d Dept 2023]; Matter of Andzel-Graziano v Graziano, 193 AD3d 1282, 1283 [3d Dept 2021]).[FN1]
Garry, P.J., Egan Jr., Reynolds Fitzgerald and McShan, JJ., concur.
ORDERED that the order is affirmed, without costs.

Footnotes

Footnote 1: Following the ensuing dispositional hearing on the mother's family offense petition, Family Court issued a separate order extending a prior order of protection against the father through August 21, 2024; no appeal appears to have been taken from that dispositional order.